## SPIRITOS MUSIC SCHOOL v. UNITED STATES

**No. 4552.**—Invoices dated Castelfidario, Italy, July 27, May 28, 1936.
Certified August 5, June 3, 1936.
Entered at Cleveland, Ohio, February 17, 1937, June 26, 1936.
Entry Nos. 1112, 1454.

(Decided on remand [Reap. Dec. 4490] March 31, 1939)

*A. R. Fiorette* for the plaintiffs.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel I. Auster*, special attorneys), for the defendant.

BROWN, Judge: This case was remanded by Division Two in Reap. Dec. 4490, decided January 10, 1939, without finding a value as the statute commands, but instead with the peremptory order that I dismiss the appeal for lack of evidence.

The importer testified that he paid what the shipper asked without question, just as he had in previous years, telling the shipper the exact kind of accordions he wanted made and paying what he demanded. In past years he had purchased lots of 24 each. These two shipments were for 72, amounting, evidently, to three lots of 24 each.

The appraisement was made upon the special agent's report which was put in evidence by the Government. The shippers made a full disclosure of their books, sales, and everything to the special agent making it.

The report recites:

(1) The principal market is Castelfidario, near Ancona, Italy.

"(2) It was stated that the accordions manufactured for the American market are made expressly for each customer and that no stocks are maintained. The characteristics of the instrument vary according to the customer."

That statement establishes that there was no home market in Italy for the imported article.

(3) It is rather infrequent that the very same construction, decoration, finish are sold to more than one buyer.

That statement establishes that it would be difficult if not impossible to compare accurately the importer's goods and their prices with other export sales to America.

(4) No price-lists are maintained. The orders from the importers do not give any prices, being based on the understanding that the manufacturer will invoice the instruments at the best price.

This substantiates the statement of the importer that he left the price to the manufacturer who was the shipper.

When one buys from a foreign manufacturer goods constructed on special order and specifications leaving the price to the shipper, there is a natural business presumption that one is buying in the usual wholesale quantities in the ordinary course of trade.

(5) It was stated that when a price is allowed to a given customer, consideration is given to his purchases during one year, rather than the usual quantity of an order.

The usual quantity of an order does not exceed 24 instruments.

The 120/41/4 accordions, with 1 register sold to Petromilli at $50 were stated to be almost similar in construction, decoration, and finish to the accordions sold to Spirito's Music School (the importer) at $45.

Then follows what is evidently the agent's inference.

This latter company was allowed a lower price in consideration of its yearly purchases, around 120 accordions, whereas Petromilli's purchases are 1 or 2 dozens of instruments in one year.

The special agent's report then recites a sale of a similar quantity to that purchased by the importer to a purchaser in Chicago at exactly the same price which the importer paid for his goods, and then several sales at the appraised value to American purchasers who only purchased one accordion each, which would seem to imply that the appraised value was the retail price for one accordion.

The latter statement above quoted is quoted in the division's opinion.

However, they do not find a value equal to the appraised value, which might, in the circumstances, have been difficult to do, on the strength of it, but instead, default the case for lack of evidence introduced by the importer in the following language:

In our judgment, the lower court committed error in giving any probative value to the proof introduced on behalf of the importer. It utterly fails to establish the elements necessary to prove value in this court. There is no competent evidence of the existence of a foreign value or an export value for such or similar merchandise, or if both exist, which is higher. No competent proof was submitted to show the usual wholesale quantities in which such or similar merchandise was bought and sold in the ordinary course of trade at the times of

exportation of the instant merchandise. No evidence of probative value was offered to show the principal markets of the country of exportation for such or similar merchandise.

This apparently overlooks the fact that the special agent stated where the market was in Italy and that, the particular goods were specially made for each customer in the American market which shows there was no market for them for home consumption in Italy, and made American sales hard to compare.

The division opinion then quotes from the report, omitting statements (1), (2), (3), and (4) above quoted, and defaulted the case for failure of the importer's evidence, apparently considering the importer was not entitled to rely on any statements in the Government agent's report which support his contentions.

The opinion also seems to rely upon the statutory presumption in favor of the appraiser's finding which, of course, vanished as soon as evidence pro and con was before the court and cannot be weighed, as if it were itself evidence, to tip the scale. Nevertheless, they did not find the appraised value was right, but only ordered dismissal for failure of the importer's proof.

The statutory command in section 501 to find a value is explicit. It directs the single judge—

who shall, after affording the parties an opportunity to be heard, determine the value of the merchandise.

The command to the division is equally plain. They—

shall consider the case upon the samples of the merchandise, if there be any, and the record made before the single judge and * * * shall affirm, reverse, or modify the decision of the single judge or remand the case to the single judge for further proceedings.

From the time of the creation of this court in 1890 until after the passage of the act of 1922, no reappraisements (revaluations) were ever dismissed for lack of evidence. This court always found a value from whatever evidence they had before them, however meager.

In recent years the Court of Customs and Patent Appeals has permitted the dismissal of reappraisements for lack of affirmative evidence. They meant, of course, in cases where there was no sufficient evidence from which a value could be found. They never meant cases where there was ample evidence before this court from which a value could be found, as in the case at bar, and where, as here, the statutory presumption in favor of the local appraiser's finding had no legal effect whatever, because it had vanished from the equation and could not be used as evidence itself to tip the scale on conflicting evidence.

In a case like this case, where the court, in the face of ample evidence, has refused to find a value, and instead remanded the case to the single

judge with peremptory directions to dismiss the appeal, there is a serious question whether such action is not subject to protest of the collector's liquidation for proceeding "upon a wrong principle contrary to law or transcending the powers conferred by statute" within the rule of *United States* v. *Passavant*, 169 U. S. 16, *United States* v. *Alex Murphy & Co.*, 16 Ct. Cust. Appls. 461, T. D. 43210; *James S. Kean* v. *United States*, 20 C. C. P. A. 388, T. D. 46186, and *Lewisohn Imp. & Trading Co.* v. *United States*, 5 Ct. Cust. Appls. 204, T. D. 34325.

The above is sufficient to show that the "dismissal" now entered is only done under constraint.

Appeal dismissed.